IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| COOK-ILLINOIS CORPORATION, ALPHA SCHOOL BUS COMPANY, INC., RICHLEE VANS, INC., ILLINOIS SCHOOL BUS, INC., and GRAND PRAIRIE TRANSIT, INC., | ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) ) |
| TEAMSTERS LOCAL NO. 777 and JAMES GLIMCO, | ) ) ) |
| Defendants. | ) |

No. 11-cv-8884

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Plaintiffs Cook-Illinois Corporation ("Cook-Illinois"), Alpha School Bus Company, Inc. ("Alpha"), Richlee Vans, Inc. ("Richlee Vans"), Illinois School Bus, Inc. ("ISB"), and Grand Prairie Transit, Inc. ("Grand Prairie") (collectively, "Plaintiffs") allege that Defendants Teamsters Local No. 777 ("Teamsters") and James Glimco ("Glimco") (collectively, "Defendants") have "conspired to commit extortionate activities against Plaintiffs in the guise of a labor organizing campaign" and have "tortiously interfered with and defamed Plaintiffs' businesses." (R. 1, Compl. ¶ 1.) Plaintiffs assert four separate civil claims under the Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq.*, as well as state law claims for tortious interference with contract and/or prospective advantage and business defamation. Before the Court is Defendants' motion to dismiss the Complaint for failure to state a claim under Federal Rule of Civil Procedure ("Rule") 12(b)(6). For the following reasons, the Court grants Defendants' motion and dismisses the Complaint without

prejudice.

## BACKGROUND[1]

Plaintiffs, all Illinois corporations, contract with school districts throughout the Northern District of Illinois to provide school bus transportation for children. (R. 1, Compl. ¶¶ 2, 8.) Cook-Illinois is the parent corporation of Alpha, Richlee Vans, ISB, and Grand Prairie. (*Id.* ¶ 3.) Teamsters is an unincorporated labor association with its principal place of business in Lyons, Illinois. (*Id.* ¶ 4.) Glimco is the president of Teamsters. (*Id.* ¶ 5.)

For several years, Plaintiffs have had exclusive contracts to provide school bus services to certain school districts. Richlee Vans, for example, has been the exclusive provider of school bus services for West Aurora School District 129 ("District 129") since 2007 and for East Aurora School District 131 ("District 131") for the past 15 years. (*Id.* ¶¶ 9-10.) Grand Prairie has been the exclusive provider of school bus services for Mount Prospect Public School District 57 ("District 57") since 2010, and ISB and Alpha have served as the exclusive providers of such services for Community High School District 218 ("District 218") since 1990. (*Id.* ¶¶ 11-12.) Several of these contracts require that Plaintiffs' school buses meet certain safety specifications and that Plaintiffs pay their drivers a certain minimum compensation. (*Id.* ¶¶ 13, 15.) Plaintiffs are in compliance with both requirements. (*Id.* ¶¶ 14, 16.)

Throughout the past five years, Defendants have attempted to organize Plaintiffs' employees and Plaintiffs' sister companies' employees. (*Id.* ¶ 17.) Although Defendants were successful with respect to Plaintiffs' sister companies' employees, Defendants have not yet

---

[1] The Court accepts the following allegations as true for the purposes of Defendants' Rule 12(b)(6) motion. *See AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011).

gained recognition from Plaintiffs' employees. (*Id.* ¶¶ 17-18.)

In October of 2011, Glimco sent a letter to Alpha's employees, falsely stating that Alpha shorted their paychecks, in violation of its contract with School District 218, and that it assigned drivers and children to unsafe school buses. (*Id.* ¶ 19.) Defendants' agents attended a District 129 school board meeting on October 3, 2011, where they falsely told members of the board that Richlee Vans' school buses were older than allowed, unsafe, and lacked the required bus aides. (*Id.* ¶ 20.) That same day, Defendants issued a press release regarding the District 129 school board meeting and posted it on several websites, including Teamsters' website. (*Id.* ¶ 21.) The press release contained false statements about Richlee Vans, including that it "has collectively robbed its Aurora workers of $719,000 in wages it was required to pay under its contract," "has underpaid workers despite its contractual obligations," and has "forced [workers] to drive dilapidated buses." (*Id.* ¶ 21.) Defendants also falsely stated in the press release that Richlee Vans' drivers must ask for basic items that are guaranteed in the contract with District 129. (*Id.*)

On October 5, 2011, Defendants, acting as the "Cook Action Network," published letters on Teamsters' website in which they falsely asserted that Richlee Vans underpaid its workers in violation of its contract with District 129, utilized overage school buses in violation of the same contract, utilized school buses that were in disrepair and unsafe, and threatened and intimidated its drivers. (*Id.* ¶ 22.) On the same day, Defendants also published letters on Teamsters' website, falsely stating that Grand Prairie violated its contract with District 57 by failing to pay required wages and benefits to its drivers and that Grand Prairie threatened and intimidated its drivers. (*Id.* ¶ 23.)

On October 24, 2011, Defendants met with John Byrne, the Superintendent of District

3

218, and told him that Alpha and ISB school buses were unsafe, failed inspections, and failed to comply with the District 218 contract. (*Id.* ¶ 24.) Defendants also told Mr. Byrne that Alpha was double-billing District 218 and engaging in unfair labor practices. (*Id.*) The following month, on November 21, 2011, Defendants distributed to Plaintiffs' employees copies of a newsletter in which they falsely stated that 1) Alpha's buses were unsafe and that it was in violation of its contract with District 218; 2) Richlee Vans underpaid its drivers "in violation of the school contract with District 129 to the tune of $700,000"; and 3) the District 129 school board has a pending legal action against Richlee Vans for violations of their contract. (*Id.* ¶ 25.)

## LEGAL STANDARD

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *AnchorBank*, 649 F.3d at 614 (internal quotation and citation omitted). Pursuant to Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)).

"In evaluating the sufficiency of the complaint, [courts] view it in the light most favorable to the plaintiff, taking as true all well-pleaded factual allegations and making all possible inferences from the allegations in the plaintiff's favor." *AnchorBank,* 649 F.3d at 614.

4

"To survive a motion to dismiss, the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face . . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 934-35 (7th Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (internal quotation marks omitted)). "The complaint 'must actually suggest that the plaintiff has a right to relief, by providing allegations that raise a right to relief above the speculative level.'" *Id.* at 935 (citing *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs.*, 536 F.3d 663, 668 (7th Cir. 2008)). "[A] plaintiff's claim need not be probable, only plausible: 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.'" *Id.* (citing *Twombly*, 550 U.S. at 556 (internal quotation omitted)). "To meet this plausibility standard, the complaint must supply 'enough fact[s] to raise a reasonable expectation that discovery will reveal evidence' supporting the plaintiff's allegations." *Id.* (citing *Twombly*, 550 U.S. at 556).

## ANALYSIS

Plaintiffs assert six counts in their Complaint: violation of 18 U.S.C. § 1962(d) by conspiring to violate § 1962(a) (Count I); violation of 18 U.S.C. § 1962(d) by conspiring to violate § 1962(b) (Count II); violation of 18 U.S.C. § 1962(d) by conspiring to violate § 1962(c) (Count III); violation of 18 U.S.C. § 1962(c) (Count IV); tortious interference with contract and/or prospective advantage (Count V); and business defamation (Count VI). Subject matter jurisdiction is premised on Plaintiffs' RICO counts. *See* 28 U.S.C. § 1331. Defendants seek

dismissal of all six counts.

I.  **Plaintiffs' RICO Claims Fail Because They Do Not Allege the Required Predicate Acts**

"RICO . . . does not cover all instances of wrongdoing. Rather, it is a unique cause of action that is concerned with eradicating organized, long-term, habitual criminal activity." *Gamboa v. Velez*, 457 F.3d 703, 705 (7th Cir. 2006). The elements of a RICO violation are "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Bressner v. Ambroziak*, 379 F.3d 478, 481-82 (7th Cir. 2004) (quoting *Lachmund v. ADM Investor Servs., Inc.*, 191 F.3d 777, 783 (7th Cir. 1999)). At "the heart of any RICO complaint is the allegation of a pattern of racketeering." *Rotella v. Wood*, 528 U.S. 549, 556, 120 S. Ct. 1075, 145 L. Ed. 2d 1047 (2000) (emphasis and internal quotation marks omitted). "A pattern of racketeering activity consists, at a minimum, of two predicate acts of racketeering committed within a ten-year time period." *Bressner*, 379 F.3d at 482 (quoting *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 728 (7th Cir. 1998)); *see also* 18 U.S.C. § 1961(5). Predicate acts, in turn, include acts indictable under a specified list of criminal laws, including extortion under 18 U.S.C. § 1951(a) (the "Hobbs Act"). *See* 18 U.S.C. § 1961(1)(B). The Hobbs Act "criminalizes interference with interstate commerce by extortion, along with attempts or conspiracies." *Wilkie v. Robbins*, 551 U.S. 537, 563, 127 S. Ct. 2588, 168 L. Ed. 2d 389 (2007).

Plaintiffs aver that Defendants have committed multiple acts of extortion and/or attempted extortion in violation of the Hobbs Act, constituting a pattern of racketeering activity. (R. 1, Compl. ¶¶ 30b-c, 38a-b, 45a-b, 52.) Defendants argue that Plaintiffs' RICO claims fail because they have not alleged predicate acts of extortion or attempted extortion under the Hobbs Act. In particular, Defendants argue that the Complaint does not allege that Defendants engaged

in an affirmative act of inducement, i.e., that Defendants coercively requested or demanded Plaintiffs to transfer property to them. (R. 17-1, Mem. of Law at 3.) Plaintiffs respond that they do not need to plead an affirmative act of inducement in order to allege extortion under the Hobbs Act. They further argue that they have nevertheless done so in their Complaint. Both of their arguments fail.

Extortion under the Hobbs Act is "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." 18 U.S.C. § 1951(b)(2). In *Evans v. United States*, 504 U.S. 255, 112 S. Ct. 1881, 119 L. Ed. 2d 57 (1992), the Supreme Court held that an affirmative act of inducement by a public official is not an element of an extortion offense "under color of official right" prohibited by the Hobbs Act. 504 U.S. at 258-59. The Supreme Court further explained that "the word 'induced' is a part of the definition of the offense by the private individual, but not the offense by the public official." *Id.* at 265. Furthermore, three months after *Evans*, the Seventh Circuit explained that

> [i]n *Evans*, the [Supreme] Court held that affirmative acts of inducement were not required to prove a violation of the Hobbs Act by extortion 'under color of official right.' Inducement is still required to prove a Hobbs Act violation by a private individual.

*United States v. Schweihs*, 971 F.2d 1302, 1310 n.4 (7th Cir. 1992); *accord United States v. Inigo*, 925 F.2d 641, 651 (3d Cir. 1991) ("An obvious element of extortion is an extortionate demand, *i.e.* a demand by the extortioner that the victim pay the extortioner a valuable consideration for return of the victim's property.") (citing cases). This case does not include any allegation that the alleged offense occurred "under color of official right." Therefore, inducement is required to establish a Hobbs Act violation in this case.

Plaintiffs have failed to allege an affirmative act of inducement. Plaintiffs rely on a single paragraph of their Complaint, in which they allege that Defendants sent letters containing false statements about Plaintiff Alpha directly to Alpha's employees in an attempt to "undermine Alpha's business and unsettle Alpha's employees." (R. 23, Opp. at 4 (citing R. 1, Compl. ¶ 19).) The paragraph on which they rely reads as follows:

> In October of 2011, Glimco sent a letter to Alpha employees. In the letter, Glimco falsely stated that Alpha was stealing from its employees by shorting their paychecks, violating its contract with School District 218, and assigning drivers and children to unsafe school buses.

(R. 1, Compl. ¶ 19.) Plaintiffs argue that such allegations "can plausibly constitute extortion, because [Defendants] unlawfully interfere[d] with Plaintiffs' business and its relationships with third parties – in this case, its employees." (R. 23, Opp. at 4.) Plaintiffs, however, do not allege that Defendants made any coercive request or demand to Plaintiffs. According to Plaintiffs' own argument, Defendants' conduct was directed at Plaintiffs' *employees*, not Plaintiffs, in an attempt to persuade the employees to organize and elect Defendant Teamsters as its collective bargaining representative. In short, Plaintiffs have not alleged that Defendants committed any act of inducement aimed at causing Plaintiffs to consent to giving up a property right.

Plaintiffs rely on *Smithfield Foods, Inc. v. United Food and Commercial Workers Int'l Union*, 633 F. Supp. 2d 214, 224 (E.D. Va. 2008), but that case is unhelpful to Plaintiffs' argument. In that case, which involved RICO claims based on predicate acts of extortion under state law, the plaintiff employers alleged that the defendant unions devised an unlawful scheme to extort an agreement from the plaintiffs to recognize certain of the unions as their exclusive

8

bargaining agents of the hourly employees of one of the plaintiffs' plants.[2] *Id.* at 219. Whether the plaintiffs had pled an affirmative act of inducement was therefore not at issue. Moreover, Plaintiffs in the present case do not allege that Defendants attempted to extort or extorted an agreement from Plaintiffs pursuant to which they would recognize Defendant Teamsters as their employees' collective bargaining agent.[3] As explained above, Plaintiffs allege that Defendants sought to persuade Plaintiffs' *employees* to elect Teamsters Local No. 777 as their collective bargaining representative, not that Defendants were attempting to induce Plaintiffs to enter into an agreement with Defendants. *See, e.g.*, Compl. ¶¶ 16-17.

Because all RICO claims require a pattern of racketeering activity, which in turn requires at least two predicate acts, Plaintiffs' failure to plead a Hobbs Act violation dooms all of their RICO claims. *See e.g., Jennings v. Auto Meter Prods., Inc.*, 495 F.3d 466, 469, 476 (7th Cir. 2007) (affirming district court's dismissal of all RICO claims, including § 1962(d), where the complaint did not allege a pattern of racketeering activity).

---

[2] The National Labor Relations Act ("NLRA") provides two ways in which a union may become a collective bargaining representative for an employer's employees. One way is if the union prevails in an election certified by the National Labor Relations Board. Another way is for the employer, under certain circumstances, to voluntarily recognize a union. *See* 29 U.S.C. § 158(a)(3) (2008).

[3] Even if they had, it is unclear whether such conduct would meet the definition of extortion under the Hobbs Act. *See Cintas Corp. v. United Here*, 601 F. Supp. 2d 571, 577-78 (S.D.N.Y. 2009), *aff'd* 355 Fed. App'x 508 (2d Cir. 2009) (holding that defendant union's attempt to induce plaintiff employer to sign a card check/neutrality agreement did not meet definition of extortion under the Hobbs Act because the employer would receive some benefit from the agreement and it did not have a right to operate its business free from criticism); *but see Smithfield*, 633 F. Supp. 2d at 223-25 (holding that predicate acts of extortion were properly pled where complaint alleged that the defendant unions attempted to extort from plaintiff employer its right to conduct its business and its right to refrain from recognizing unions).

9

## II. Additional Deficiencies in Plaintiffs' Complaint

In addition to failing to allege a pattern of racketeering activity, Plaintiffs' Complaint contains additional deficiencies, as discussed below.

### A. Section 1962(c) (Count IV)

Count IV alleges a violation of § 1962(c), which "makes it a crime for 'any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity.'" *Wilkie*, 551 U.S. at 563. In *Reves v. Ernst & Young*, 507 U.S. 170, 178-79, 113 S. Ct. 1163, 122 L. Ed. 2d 525 (1993), the Supreme Court held that a defendant must participate in the operation or management of the enterprise itself before the defendant can be held liable under § 1962(c). *See also United States v. Cummings*, 395 F.3d 392, 397 (7th Cir. 2005) ("Supreme Court precedent teaches that [the phrase "to conduct or participate" in § 1962(c)] 'indicates some degree of direction' . . . so that a person charged to have conducted or participated in the enterprise's affairs within the meaning of § 1962(c) must have had 'some part in directing those affairs.'") (citing *Reves*, 507 U.S. at 178-79); *see also Goren*, 156 F.3d at 727 ("[M]ere participation in the activities of the enterprise is insufficient; the defendant must participate in the operation or management of the enterprise."); *Brouwer v. Raffensperger, Hughes & Co.*, 199 F.3d 961, 964 (7th Cir. 2000) (noting that the phrase "'participate' requires that one have some part in directing the affairs of the enterprise, not primary responsibility, but *some* part in directing the enterprise's affairs is required")

(quoting *Reves*, 507 U.S. at 179) (internal quotation marks omitted).[4]

Plaintiffs argue that the allegations in the Complaint meet the standard announced in *Reves*, relying solely on their allegations that "Defendants were and are associated with the International Brotherhood of Teamsters enterprise and have conducted or participated, directly or indirectly, in the management and operation of the affairs of the International Brotherhood of Teamsters enterprise in relation to Plaintiffs" and that Defendants "agreed and intended, and/or adopted the goal of furthering or facilitating" the endeavor of conducting or participating in the management of the International Brotherhood of Teamsters through a pattern of extortion. (R. 1, Compl. ¶¶ 45, 52.) Defendants argue that Plaintiffs' allegations are a mere recitation of the elements of a § 1962(c) cause of action and do not set forth any facts to state a claim that is plausible on its face. The Court agrees. Plaintiffs' boilerplate allegations are completely void of any factual content. Plaintiffs' allegations constitute a "mere formulaic recitation of the elements" of § 1962(c) and are therefore insufficient to withstand a Rule 12(b)(6) motion to dismiss. *See Bell Atl.*, 550 U.S. at 555 ("a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do"); *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007) (same); *Rao v. BP Prods. N. Am., Inc.*, 589 F.3d 389, 398-401 (7th Cir. 2009) (affirming dismissal of boilerplate RICO claims that constitute formulaic recitation of elements).

---

[4] The Seventh Circuit has held that in the conspiracy context, under § 1962(d), the defendant must "knowingly agree to perform services of a kind which facilitate the activities of those who are operating [or managing] the enterprise in an illegal manner." *Cummings*, 395 F.3d at 397-98 (citations omitted).

### B. Conspiracy claims under § 1962(d)

"[I]n order to plead a viable § 1962(d) claim, a plaintiff must allege that a defendant agreed to the objective of a violation of RICO." *Goren*, 156 F.3d at 732 (citation and internal quotation marks omitted). As the Supreme Court teaches, "[a] conspirator must intend to further an endeavor which, if completed, would satisfy all of the elements of a substantive [RICO] offense." *Salinas v. United States*, 522 U.S. 52, 64 (1997); *see also Goren*, 156 F.3d at 732 ("We have stressed that the touchstone of liability under § 1962(d) is an agreement to participate in an endeavor which, if completed, would constitute a violation of the substantive statute.") (citation omitted).

#### 1. Conspiracy to violate § 1962(c) (Count III)

Count III alleges a § 1962(d) conspiracy to violate § 1962(c). Where a plaintiff fails to allege a claim for violation of § 1962(c), the plaintiff's § 1962(d) conspiracy claim fails if it is based on the same nucleus of operative facts as its § 1962(c) claim. *See Stachon v. United Consumers Club, Inc.*, 229 F.3d 673, 677 (7th Cir. 2000); *Xinos v. Kappos*, 270 F. Supp. 2d 1027, 1033-34 (N.D. Ill. 2003). Plaintiffs' § 1962(d) claim is based on the same allegations as its § 1962(c) claim. It accordingly fails for same reasons set forth above. *Id.*; *see also Meier v. Musburger*, 588 F. Supp. 2d 883, 911-12 (N.D. Ill. 2008) (holding that a failure to make out a substantive RICO claim requires dismissal of a conspiracy claim based on the same nucleus of operative fact because a conspirator "must intend to further an endeavor which, if completed, would satisfy all of the elements of a substantive" offense under § 1962(a)-(c)).

#### 2. Conspiracy to violate § 1962(b) (Count II)

Section 1962(b) makes it unlawful "for any person through a pattern of racketeering

activity . . . to acquire or maintain, directly or indirectly, any interest in or control of any enterprise . . . ." 18 U.S.C. § 1962(b). To prove a violation of § 1962(d) for conspiracy to violate § 1962(b), Plaintiffs must allege "(1) that each defendant agreed to maintain an interest in or control of an enterprise . . . through a pattern of racketeering activity and (2) that each defendant further agreed that someone would commit at least two predicate acts to accomplish th[at] goal[]." *Lachmund*, 191 F.3d at 784 (quoting *Goren*, 156 F.3d at 732). Plaintiffs' allegations must support a plausible inference that Defendants intended to further an endeavor which, if completed, would satisfy all of the elements of a violation of § 1962(b). *See Salinas*, 522 U.S. at 64; *see also Meier*, 588 F. Supp. 2d at 911-12.

Once again, Plaintiffs' allegations are largely conclusory and void of any factual support. *See Goren*, 156 F.3d at 733 ("It is well established that a complaint may be dismissed if it contains only conclusory, vague and general allegations of a conspiracy.") (citations omitted). Indeed, it is difficult to discern Plaintiffs' precise theory of liability from the allegations in the Complaint. Construing the allegations in their favor, Plaintiffs appear to assert that Defendants' conspiratorial objective was to organize Plaintiffs' employees into a labor union through a pattern of extortion and thereby acquire an interest in, or control of, Plaintiffs' enterprises.[5] Defendants argue that Plaintiffs' claim fails because even if Defendants were successful in their endeavor of organizing Plaintiffs' employees into a union through a pattern of extortion, it would not result in Defendants acquiring or maintaining an interest in or control of Plaintiffs' companies and thus would not result in a violation of § 1962(b).

---

[5] Indeed, this is the theory that Defendants surmised from Plaintiffs' Complaint, and Plaintiffs did not dispute it in their response.

13

The Court agrees with Defendants. As Defendants note, after a company's employees choose a collective bargaining representative, the company has an obligation to negotiate in good faith with such representative on the employees' wages, hours and other terms and conditions of employment. *See generally First Nat'l Maint. Corp. v. NLRB*, 452 U.S. 666, 667, 674-75 n.12 (1981). This does not mean, however, that the collective bargaining representative acquires an "interest in or control of" the company under § 1962(b). *See generally id*. at 676 ("[I]n establishing what issues must be submitted to the process of bargaining, Congress had no expectation that the elected union representative would become an equal partner in the running of the business enterprise in which the union's members are employed."); *Matrix IV v. Am. Nat'l Bank and Trust Co.*, No. 06 C 1661, 2007 WL 853968, at *9 (N.D. Ill. Mar. 15, 2007) ("The purpose of § 1962(b) is to prohibit 'the *takeover* of legitimate businesses through racketeering . . . .'") (quoting *In re VMS Secs. Litig*., 752 F. Supp. 1373, 1403 (N.D. Ill. 1990) (emphasis added)).

Plaintiffs contend that "courts have already accepted the plausibility that a union's so-called 'organizing' activity can not only cross the line into racketeering activity, but also that such actions may result in the unlawful acquisition by the union of an interest in an employer's enterprise." (R. 23, Opp. at 7.) It is true that union activity can, in certain circumstances, constitute extortion. *See e.g., United States v. Enmons*, 410 U.S. 396, 400, 93 S. Ct. 1007, 35 L. Ed. 2d 379 (1973) (noting that the Hobbs Act has been held to "reach instances where union officials threatened force or violence against an employer in order to obtain personal payoffs, and where unions used the proscribed means to exact wage payments from employers in return for imposed, unwanted, superfluous and fictitious services of workers") (citing, among other

cases, *United States v. Green*, 350 U.S. 415, 417, 76 S. Ct. 522, 524, 100 L. Ed. 494 (1956) (internal quotation marks omitted)).[6] Plaintiffs, however, have cited no authority to support the second half of their proposition. More specifically, they have not cited any case in which a court has held that the type of organizing activity that they allege in the Complaint, which does not involve personal payoffs or exacting wage payments from employers in return for imposed, unwanted, superfluous and fictitious services, may result in the union's unlawful acquisition of an interest in the employer's enterprise.[7]

## III. State Law Claims

Plaintiffs assert state law claims for business defamation and tortious interference with contract and prospective advantage. (R. 1, Compl., Counts V and VI.) A court may decline to exercise supplemental jurisdiction over state law claims where it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Given that the Court has dismissed all of Plaintiff's federal RICO claims, "all that is left is a dispute between Illinois citizens regarding Illinois entities," and therefore the "interests of justice are best served by having an

---

[6] In *Enmons*, the Supreme Court stated that the Hobbs Act does not reach "the use of violence to achieve legitimate union objectives, such as higher wages in return for genuine services which the employer seeks. In that type of case, there has been no 'wrongful' taking of the employer's property; he has paid for the services he bargained for, and the workers receive the wages to which they are entitled in compensation for their services." *Id.*

[7] In *Smithfield Foods*, the Court denied a motion to dismiss a claim for conspiracy to violate § 1962(b) where the complaint contained allegations explaining how the union defendants would gain autonomy and control over the plaintiff company's business operations if the defendants were successful in extorting the plaintiff's voluntary recognition of the union. 633 F. Supp. 2d at 229. The Complaint here contains no such allegations. Moreover, the additional cases on which Plaintiffs rely are inapposite because they do not address § 1962(b). Rather, they address whether, and under what circumstances, intangible property constitutes "property" under the Hobbs Act. (R. 23, Opp. 7 (citing *United States v. Santoni*, 585 F.2d 667, 673 (4th Cir. 1978); *United States v. Gotti*, 459 F.3d 296, 325 (2d Cir. 2006).)

15

Illinois court preside over the matter." *Xinos*, 270 F. Supp. 2d at 1034 (citing *O'Grady v. Village of Libertyville*, 304 F.3d 719, 725 (7th Cir. 2002)).

## IV.     Leave to Amend

Plaintiffs request leave to amend their Complaint, and Defendants do not oppose the request. In the interests of justice, the Court grants Plaintiffs leave to file an amended complaint on or before May 25, 2012.

## CONCLUSION

For the reasons explained above, the Court grants Defendants' motion to dismiss and dismisses the case without prejudice. Plaintiffs are granted leave to file an amended complaint on or before May 25, 2012.

DATED: May 10, 2012                                          ENTERED

*[signature]*

AMY J. ST. EVE
United States District Court Judge